**Russell BAKER**

v.

**CONNECTICUT BANK & TRUST CO.**

**Civ. No. B-84-598 (EBB).**

United States District Court,
D. Connecticut.

Aug. 19, 1988.

---

Toni Robinson, Leaf, Deull, Sternklar & Drogin, New York City, for plaintiff.

Ronald M. Green, Peter M. Burns, Stephen Mills, Peter M. Stein, Epstein, Beck & Green, Stamford, Conn., for defendant.

## RULING ON MOTION FOR NEW TRIAL

ELLEN B. BURNS, Chief Judge.

The jury in the instant matter returned a defendant's verdict on May 13, 1988, and judgment entered accordingly on May 16, 1988. Plaintiff has moved for a new trial pursuant to Fed.R.Civ.P. 59, asserting several grounds of error.

The parties agree that *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir.1978), guides this court's review of the present motion.

The trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not.

*Id.* (quoting with approval 6A *Moore's Federal Practice,* ¶ 59.08[5], at 59–160–59–161 (2d ed. 1973) (footnotes omitted)).

The instant matter involved an alleged violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff contended that, only one and one-half months after the merger of State National Bank ("SNB"), his original employer, and Connecticut Bank and Trust ("CBT"), his new superior at CBT, CBT Executive Vice–President Seymour Smith, forced him to retire from CBT because of his age. While CBT conceded at trial that Smith wanted to terminate Baker's employment with the defendant, CBT argued that Smith was dissatisfied with Baker's performance and that Smith envisioned retirement as a mutually beneficial arrangement in contrast with an outright termination of the plaintiff. The defendant further contended that Baker actually voluntarily retired before Smith and CBT could act to separate him. The case was tried to a jury. In response to the first interrogatory of the Special Verdict Form, asking "Do you find that Mr. Baker has proven by a preponderance of the evidence that his employment with CBT ended involuntarily?", the jury answered "No." Following the court's instructions, the jury did not go on to answer any of the questions regarding the ADEA.

Plaintiff's contention that the verdict is contrary to the weight of the evidence is unpersuasive. Although the trial of this case consumed an inordinate amount of time, *see* discussion *infra*, the initial and only interrogatory the jury answered presented the simple and straightforward issue of whether CBT forced Baker to retire. Particularly relevant to this inquiry was the testimony regarding the retirement conversation which Smith had with Baker, the conversation which Baker had with Joseph Fahey, Baker's superior at SNB and then the Chairman of the CBT Board of Directors, about staying on at CBT, and the actions Smith undertook with the CBT personnel department. As the testimony developed at trial, the question of whether Baker's retirement was volun-

tary or coerced was a classic question of fact for the trier of fact to decide.

Plaintiff's emphasis that Smith's decision to terminate him occurred only one and one-half months after the merger and on the verge of his sixty-fifth birthday, implying that the motivating reason therefore had to be age, is misguided. Plaintiff's argument ignores Smith's testimony that he knew Baker before the merger, as they both were active in various banking associations and community groups, and that he was not impressed with Baker's ability. The court concludes that the jury's determination of voluntary retirement is not erroneous and therefore does not meet the seriously erroneous standard. That a court may disagree with the jury's finding of voluntariness does not suffice to order a new trial. *Bevevino, supra,* 574 F.2d at 685. Furthermore, when viewed on the whole, because the court believes that CBT offered legitimate, non-discriminatory reasons for seeking Baker's termination, the defendant's verdict in this matter is an appropriate resolution of the parties' dispute. The jury's verdict did not result in a miscarriage of justice. Accordingly, the court declines to order a new trial.

Plaintiff's argument that CBT's lead counsel made improper argument in summation is insufficient to order a new trial. Baker contends that defendant's attorney improperly argued that plaintiff's lead counsel had prepared questions and answers for plaintiff's witnesses, and that plaintiff had bought the testimony of his witnesses.

> In ruling on a motion for a new trial based on attorney misconduct, the trial court must determine whether counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury. The trial judge has considerable discretion in determining whether a new trial is required.

*Strobl v. New York Mercantile Exchange,* 582 F.Supp. 770, 780 (S.D.N.Y.1984) (citations omitted), *aff'd other grds,* 768 F.2d 22 (2d. Cir.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985).

Especially important to recognize in the instant case is the overall hostile atmosphere which pervaded the trial, caused generally by the incompatibility of counsel. *See, e.g., Guccione v. Hustler Magazine, Inc.,* 632 F.Supp. 313, 326 (S.D.N.Y.) ("by the time summations were made, the jury was inured to the hyperbole and the atmosphere of hostility between former antagonists...."), *rev'd other grds.,* 800 F.2d 298 (2d Cir.1986), *cert. denied,* 479 U.S. 1091, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987). This was a bitterly contested matter, originating with numerous bellicose discovery disputes and continuing at trial with constant acrimonious and quarrelsome conflicts regarding anything and everything that could imaginably be challenged. A bare record of the proceedings cannot recreate the intense rancor, happily unprecedented in this court's almost fifteen years of judicial experience, that permeated all aspects of the trial. The ceaseless bickering between counsel caused what was originally envisioned to be a six-day trial to devour sixteen trial days.

Standing alone, the comments by defendant's counsel in summation may have approached and crossed the line of propriety, particularly his comment "somebody ... then buys some people to testify to it," raising potentially troublesome issues. However, in the context of this trial, the court determines that defense counsel's lapses were not prejudicial to the plaintiff. Counsel for the defendant, through his examinations of the witnesses and proper argument, made it perfectly clear what implications he was making and what inferences he hoped and wanted the jury to draw. Where defendant's counsel misspoke, the court cannot conclude that his direct oral expression so aided the defendant's case as to prejudice the plaintiff. In contrast with *DeVito v. United Air Lines,* 98 F.Supp. 88, 101–05 (E.D.N.Y.1951) (repeated, numerous acts of misconduct throughout trial and summation), on which plaintiff relies, counsel's statements in summation simply do not rise to that level of egregiousness which might entitle plaintiff to a new trial. *See, e.g., Koufakis v. Carvel,* 425 F.2d 892, 900–05 (2nd Cir.1970) (repeated miscon-

duct by counsel, despite admonition by court, in unfairly characterizing opposing counsel, opposing party, and witnesses, and using references to matters not in the record). The court cannot conclude that the jury, after observing defendant's counsel and plaintiff's counsel wage battle for sixteen days, was affected to plaintiff's detriment by defense counsel's caustic remarks. Although plaintiff's motion necessarily focuses on the conduct of defendant's counsel, plaintiff's attorney's conduct is not immune from criticism and she must bear the responsibility for setting the strident tone of this case. Moreover, the jury was instructed several times during the summations and again in the charge that the arguments of counsel are not evidence. Plaintiff was not prejudiced by counsel's remarks in summation, therefore, a new trial is not called for.

Plaintiff's remaining arguments may be summarily rejected. Baker's contention that the issue of the rollover contribution should not have been submitted to the jury and that its submission prejudiced him is curious and surprising given that plaintiff submitted a proposed rollover contribution charge in his original jury instructions and then, during trial, submitted further proposed instructions on the issue. Plaintiff's Pre-trial Memorandum of January 7, 1988, Jury Instruction No. 23; Plaintiff's Additional Requests to Charge of May 9, 1988. In any event, as the jury never reached the rollover question, plaintiff's speculative assertions are of no consequence to the instant motion and are meritless.

Plaintiff's contention that the jury was confused or failed to follow the court's instructions is unavailing. That the jury deliberated for approximately one and one-half hours reflects and is consistent with the jury answering only one interrogatory. There is no magical, established period of time which corresponds to a properly performed jury deliberation. Moreover, plaintiff's hypothesizing regarding the jury's deliberation, drawing every inference adversely to plaintiff, is sheer conjecture. The fact may well be that the jury felt plaintiff had no case at all and viewed extended discussion as pointless. Indeed,

if the jury was out-of-control as plaintiff contends, and if the jury believed that Baker was wronged, either because CBT wanted him out because of his age or because CBT treated him poorly, the jury would have presumably swept through the special verdict form, finding for the plaintiff on each question. Defendant correctly notes that the jury could have found for the plaintiff without reaching the allegedly worrisome rollover issue. Furthermore, the common-law principle that juror testimony is inadmissible to impeach a verdict, recently re-affirmed in *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 2745–49, 97 L.Ed.2d 90 (1987) (juror testimony regarding jury's use of alcohol and drugs during trial inadmissible); *see also* Fed.R. Evid. 606(b), provides ample reason for rejecting plaintiff's contentions and is dispositive of this issue.

## CONCLUSION

The plaintiff's motion for a new trial raises numerous meritless contentions. Accordingly, for the reasons discussed above, the motion for a new trial is denied.

SO ORDERED.